UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ABBAS CORPORATION (PVT) LIMITED,

                       Plaintiff,       Civil Action No.
      -against-                  14 CV 6771 (VM)

MICHAEL AZIZ ORIENTAL RUGS, INC.,
MICHAEL AZIZ, MARK AZIZ,
JOSHUA AZIZ, SORAYA AZIZ, and
HOME INTERIORS CORP.,
                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

**DILWORTH PAXSON LLP**
Ira N. Glauber
99 Park Avenue, Suite 320
New York, New York 10016
Tel: (917) 675-4252

*Attorneys for Plaintiff Abbas*
*Corporation (PVT) Limited*

Dated: April 7, 2017

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

THE FIRST AMENDED COMPLAINT ................................................................... 3

ARGUMENT .............................................................................................................. 4

**POINT I**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT PIERCING THE CORPORATE VEIL AS TO DEFENDANT MICHAEL AZIZ (SIXTH CLAIM FOR RELIEF)** ................................................................................................................... 4

    A.    The Standard for Summary Judgment ................................................. 4

    B.    Collateral Estoppel Effect Should Be Given To The Decision Of The Massachusetts Federal Court ................................................................ 4

    C.    The Court Should Pierce The Corporate Veil And Hold Michael Aziz Personally Liable For The Judgment and $500,000 Loan ........................ 6

**POINT II**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT FOR FRAUDULENT CONVEYANCE AGAINST MICHAEL AND JOSHUA AZIZ, PLUS LEGAL FEES (SECOND, THIRD, AND FOURTH CLAIMS FOR RELIEF)** ................................ 14

    A.    Claim Two: NY DCL § 273 .................................................................. 16

    B.    Claim Three: N.Y. DCL § 276 ............................................................. 17

    C.    Claim Three: NY DCL § 276-a (Legal Fees) ...................................... 18

    D.    Claim Four: NY DCL § 278 ................................................................ 19

**POINT III**

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANTS MICHAEL AND SORAYA AZIZ FOR BREACH OF FIDUCIARY DUTY (FIFTH CLAIM FOR RELIEF)** ............................................................................... 20

**POINT IV**

**SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST AZIZ INC. ON THE FIRST CLAIM FOR RELIEF FOR NON-PAYMENT OF THE $500,000 LOAN** ............ 23

CONCLUSION ......................................................................................................... 24

119537624_1

## TABLE OF AUTHORITIES

**Cases**

*10-4 W. 108th St. Realty, Ltd. v. Redwood Dev., Ltd.*,
   220 A.D.2d 279, 632 N.Y.S.2d 538 (1st Dep't 1995) .................................... 16

*A.W. Fiur Co. Inc. v. Ataka & Co., Ltd.*,
   71 A.D.2d 370, 422 N.Y.S.2d 419 (1st Dep't 1979) .................................... 8

*ABN AMRO Bank, N.V. v. MBIA Inc.*,
   17 N.Y.3d 208, 928 N.Y.S.2d 647 (N.Y. 2011) .................................... 8

*Administrators of Tulane Educational Fund v. Ipsen Pharma, S.A.S.*,
   770 F.Supp.2d 24 (D.D.C. 2011) .................................... 6

*Allen v. McCurry*,
   449 U.S. 90 (1980) .................................... 5

*Am. Federated Title Corp. v. GFI Management Services, Inc.*,
   126 F.Supp.3d 388 (S.D.N.Y. 2015) .................................... 7

*Am. Panel Tec. v. Hyrise, Inc.*,
   31 A.D.3d 586, 819 N.Y.S.2d 768 (2d Dep't 2006) .................................... 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................... 4

*Ball v. A. O. Smith Corp.*,
   451 F.3d 66 (2d Cir. 2006) .................................... 4

*Catalano v. Applied Biometrics Products, Inc.*,
   2003 WL 22004902 (S.D.N.Y. Aug. 25, 2003) .................................... 5

*Chariot Plastics, Inc. v. United States*,
   28 F. Supp. 2d 874 (S.D.N.Y. 1998) .................................... 5

*Chrysler Capital Corp. v. Century Power Corp.*,
   778 F. Supp. 1260 (S.D.N.Y. 1991) .................................... 16

*Clarkson Co. Ltd. v. Shaheen*,
   660 F.2d 506 (2d Cir. 1981), *cert. denied*, 455 U.S. 990 (1982) .................................... 19

*County of Dutchess v. Dutchess Sanitation Services, Inc.*,
   86 A.D.2d 884, 447 N.Y.S.2d 531 (2d Dep't 1982) .................................... 21

*Dempster v. Overview Equities, Inc.*,
   4 A.D.3d 495, 773 N.Y.S.2d 71 (2d Dep't 2004) .................................... 11

*Dillon v. Dean*,
   236 A.D.2d 360, 653 N.Y.S.2d 639 (2d Dep't 1997) .................................... 17

*Dixie Yarns, Inc. v. Forman*,
   906 F. Supp. 929 (S.D.N.Y. 1995) .................................... 18

*Fern, Inc. v. Adjmi*,
   197 A.D.2d 444, 602 N.Y.S.2d 615 (1st Dep't 1993) .................................... 9

*Gasser v. Infanti International, Inc.*,
   353 F. Supp. 2d 342 (E.D.N.Y. 2005) .................................... 18

*Godwin Realty Assoc. v. CATV Enterprises, Inc.*,
   275 A.D.2d 269, 712 N.Y.S.2d 39 (1st Dep't. 2000) .................................... 8

*Hassett v. Goetzmann*,
   217 B.R. 9 (Bankr. N.D.N.Y 1998) .................................... 16, 21

ii

*Heimbinder v. Berkovita*,
 670 N.Y.S.2d 301 (N.Y. Sup. Ct. 1998) .................................................................................. 20

*Holme v. Global Minerals and Metals Corp.*,
 63 A.D.3d 417, 879 N.Y.S.2d 453 (1st Dep't. 2009) ............................................................... 9

*Hughes v. BCI Intern. Holdings, Inc.*,
 452 F. Supp. 2d 290 (S.D.N.Y. 2006)...................................................................................... 19

*ICBC (London) PLC v. Blacksands Pacific Group, Inc.*,
 662 Fed. Appx. 19 (2d. Cir. 2016)........................................................................................... 22

*In re Adelphia Comm'ns Corp.*,
 323 B.R. 345 (Bankr. S.D.N.Y. 2005)................................................................................ 19, 20

*In re Kilroy*,
 357 B.R. 411 (Bankr. S.D. Tex. 2006) ...................................................................................... 6

*In re MarketXT Holdings Corp.*,
 376 B.R. 390 (Bankr. S.D.N.Y 2007)....................................................................................... 17

*In re Nisivoccia*,
 502 B.R. 139 (Bankr. E.D.N.Y. 2013) ....................................................................................... 5

*In re Palermo*,
 2011 WL 3874866 (S.D.N.Y. Sept. 2, 2011)........................................................................... 18

*In Site Services Corp., LLC v. American Electric Power Co., Inc. (In re In Site Services Corp, LLC)*,
 287 B.R. 79 (Bankr. S.D.N.Y. 2002) ....................................................................................... 10

*Jensen v. Jensen*,
 256 A.D.2d 1162, 682 N.Y.S.2d 774 (4th Dep't 1998).......................................................... 17

*JP Morgan Chase Bank, N.A. v. Reifler*,
 2014 WL 11350916 (S.D.N.Y. May 16, 2014) ........................................................................ 23

*JSC Foreign Econ. Association Technostroyexpert v. International Develop. And Trade Services, Inc.*,
 295 F. Supp. 2d 366 (S.D.N.Y. 2003).........................................................................................7

*Lyons v. Lancer Insurance Co.*,
 681 F.3d 50 (2d Cir. 2012)......................................................................................................... 4

*M. Prusman, Ltd. v. Ariel Maritime Group, Inc.*,
 781 F. Supp. 248 (S.D.N.Y. 1991) ............................................................................................. 5

*New York Men's Adjustment Bureau, Inc. v. Weiss*,
 305 N.Y. 1, 110 N.E.2d 397 (N.Y. 1953) ................................................................................ 19

*Norris v. Grosvenor Marketing Limited*,
 803 F.2d 1281 (2d Cir. 1986)...................................................................................................... 5

*Northern Tankers (Cypress) Ltd. v. Backstrom*,
 967 F.Supp. 1391 (D. Conn. 1997) .......................................................................................... 11

*Orr v. Kinderkill Corp.*,
 991 F.2d 31 (2d Cir. 1993)........................................................................................................ 19

*Pepper v. Litton*,
 308 U.S. 295 (1939).................................................................................................................. 21

*RSL Communications PLC ex rel. Jervis v. Bildirici*,
 2006 WL 2689869 (S.D.N.Y. Sept. 14, 2006)......................................................................... 20

*RTC Mortg. Trust 1995-S/N1 v. Sopher*,
 171 F. Supp. 2d 192 (S.D.N.Y. 2001)...................................................................................... 10

iii

*Sklaroff v. Rosenberg,*
    125 F.Supp.2d 67 (S.D.N.Y. 2000)................................................................ 16

*Swiatkowski v. Citibank,*
    745 F. Supp. 2d 150 (E.D.N.Y 2010) ........................................................... 4

*Tap Holdings, LLC v. Orix Finance Corp.,*
    109 A.D.3d 167, 970 N.Y.S.2d 178 (1st Dep't 2013) ................................. 10

*TNS Holdings, Inc. v. MKI Securities Corp.,*
    243 A.D.2d 297, 663 N.Y.S.2d 144 (1st Dep't 1997), *rev.'d on other grounds*, 92
    N.Y.2d 335, 680 N.Y.S.2d 891 (N.Y. 1998) ................................................ 9

*Vaccaro v. Bank of America, N.A.,*
    2016 WL 4926201 (S.D.N.Y. Sept. 15, 2016)............................................. 4

*Valley Nat. Bank v. Greenwich Ins. Co.,*
    254 F.Supp.2d 448 (S.N.D.Y. 2003)............................................................ 22

*Ventresca Realty Corp. v. Houlihan,*
    41 A.D.3d 707, 838 N.Y.S.2d 609 (2d Dep't 2007) ..................................... 9

*Wall Street Associates v. Brodsky,*
    257 A.D.2d 526, 684 N.Y.S.2d 244 (1st Dep't 1999) ........................... 11, 17

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*
    933 F.2d 131 (2d Cir. 1991)......................................................................... 8

**Statutory Authorities**
N.Y. Debt. & Cred. Law § 273 ........................................................... 15, 16, 17
N.Y. Debt. & Cred. Law § 275 ..................................................................... 16
N.Y. Debt. & Cred. Law § 276 ..................................................................... 17
N.Y. Debt. & Cred. Law § 276-a............................................................. 17, 18
N.Y. Debt. & Cred. Law § 278 ..................................................................... 18

**Rules and Regulations**
Fed. R. Civ. P. 56(a) ....................................................................................... 4

**Treatises**
5 J. Weinstein, *H. Korn, & A. Miller,  New York Civil Practice*, ¶ 5011.27 (1985)...................... 5

iv

## PRELIMINARY STATEMENT

Plaintiff Abbas Corporation (PVT) Limited ("Abbas" or "Plaintiff") respectfully submits this memorandum of law in support of its motion for summary judgment against defendants Michael, Joshua, and Soraya Aziz for piercing the corporate veil, breach of fiduciary duty, and fraudulent conveyance (plus legal fees), based on the Decision and Order of U.S. District Court Judge Timothy S. Hillman entered on April 19, 2016 in the related case of *Abbas Corporation (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc.*, U.S. District Court, District of Massachusetts, Case No. 1:14-mc-91053 (the "Massachusetts Action").[1] Plaintiff also moves for summary judgment against defendant Michael Aziz Oriental Rugs, Inc. ("Aziz, Inc.") for non-payment of a $500,000 loan made by Abbas to Aziz, Inc.

This is an action brought by Abbas to remedy defendants' concerted efforts to frustrate Abbas' recovery upon a $438,517.92 judgment rendered in this Court against defendant Aziz, Inc. in October 2011 after a full trial on the merits for unpaid goods sold and delivered (the "Judgment").  The judgment was entered in *Abbas Corporation (PVT) Ltd. v. Michael Aziz Oriental Rugs, Inc.*, SDNY Case No. 11-15039 (VM), following issuance of a written decision reported at 820 F.Supp.2d 549 (S.D.N.Y. 2011) (Marrero, J).

In the Massachusetts Action, the District Court found that Michael Aziz created a dummy corporation to act as his alter ego by the name of  Home Interiors Corp. ("Home Interiors"), and that "Home Interiors was created as a sham corporation for the sole purpose of cutting off Abbas's rights to Aziz Inc.'s assets." Decision at 9.  The Massachusetts federal court also took note of the "manipulations" engaged in by Michael Aziz and his son Joshua Aziz (the nominal

---

[1]      A copy of the Decision in the Massachusetts Action (hereinafter, the "Decision") is annexed as Exhibit A to the accompanying Affidavit of plaintiff's counsel, Ira N. Glauber ("Glauber Affidavit"), sworn to April 7, 2017.

owner of Home Interiors) (*id.*), and pointedly noted that they had engaged in a "scheme." *Id.* at p. 9, n. 3.

The Massachusetts Action was commenced by Abbas in 2014 to levy upon a $136,000 account receivable owed to Aziz, Inc. by one of its Massachusetts customers, a company named Arthur T. Gregorian, Inc. ("Gregorian" and the "Gregorian Receivable"). Defendant Home Interiors intervened in the Massachusetts Action, claiming that it had a superior right to Aziz, Inc.'s assets. However, upon scrutiny by the Massachusetts federal court, it was judicially determined that Home Interiors was a "sham corporation" set up by Michael Aziz to steal the Gregorian Receivable, and thus prevent Abbas from exercising its rights as a judgment creditor to levy on Aziz, Inc.'s assets.

Massachusetts federal court judge Hillman succinctly summarized the facts of the scheme as follows:

> It is clear that Home Interiors was created for the sole purpose of benefiting Michael and Aziz, Inc. at the expense of Abbas, a judgment creditor. More specifically, rather than simply paying off the note to Valley National Bank, which Michael as a guarantor was legally obligated to do, Michael, using his son, formed Home Interiors. Home Interiors then purchased the Aziz, Inc. note from Valley National Bank and obtained an assignment of bank's lien on Aziz Inc.'s assets, including the Gregorian Receivable. Had Michael (or Home Interiors) simply paid off the note, the lien would have been extinguished and Abbas would have a priority interest therein. Instead, Michael and Aziz, Inc.'s indebtedness to Valley National Bank is not only extinguished, through Home Interiors they have a priority security interest in the Gregorian Receivable. Once Home Interiors executes on the Gregorian Receivable, that money will be passed through to Michael/Aziz, Inc. In other words, Home Interiors was created as a sham corporation for the sole purpose of cutting off Abbas's right to Aziz Inc.'s assets, including the Gregorian Receivable, in favor of Michael and Aziz, Inc. Under these circumstances, the Court is hard-pressed to conclude that the parties would be in the same position absent the manipulations engaged in by Michael, Aziz, Inc. and Joshua. Therefore, I am denying Home Interior's motion for

2

summary judgment and granting Abbas's motion for summary judgment.

Decision at 7-9 (emphasis added, footnote omitted).  The facts relied on by the Massachusetts court are summarized in paragraph 33 of the Glauber Affidavit.  No appeal was taken from the decision of the Massachusetts federal court.

## THE FIRST AMENDED COMPLAINT[2]

Abbas commenced the instant action on August 20, 2014 for non-payment of the $500,000 loan and for claims related to defendants' efforts to frustrate enforcement of the Judgment.  Abbas amended the complaint on December 12, 2014 through the filing of the First Amended Complaint.

The defendants named in the First Amended Complaint are the following:

- Aziz Inc., which is the defunct corporation against which there is the unsatisfied judgment of $438,517.92 entered by this Court;

- Michael Aziz, the owner of 53% of the stock of Aziz Inc. and the person behind the scheme to prevent Abbas from levying on Aziz Inc.'s assets;

- Soraya Aziz, who is Michael Aziz's wife and the 43% owner of the stock of Aziz Inc.;

- Joshua Aziz, another son of Michael Aziz, who was used by him to be the nominal owner of Home Interiors;

- Mark Aziz, one of Michael Aziz's sons who worked in the business with him (and whose testimony at the 2011 trial before this court was totally discredited);

- Home Interiors, the "sham corporation" set up by Michael Aziz as part of his scheme to prevent Abbas from levying on Aziz Inc.'s assets, and which is now defunct.

The causes of action in the First Amended Complaint are: breach of the loan agreement by Aziz, Inc. (First Claim for Relief); fraudulent conveyance claims against all defendants

---

[2]  A copy of the First Amended Complaint is annexed to the Glauber Affidavit as Exhibit D.

3

(Second, Third, and Fourth Claims for Relief); breach of fiduciary duty owed to creditors by directors of an insolvent corporation (Fifth Claim for Relief); piercing the corporate veil (Sixth Claim for Relief); accounting (Seventh Claim for Relief); and aiding and abetting against defendants Mark Aziz and Joshua Aziz (Eighth Claim for Relief).

## ARGUMENT

## POINT I

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT PIERCING THE CORPORATE VEIL AS TO DEFENDANT MICHAEL AZIZ (Sixth Claim For Relief)

A.   The Standard for Summary Judgment

A district court may grant summary judgment on a cause of action if the record, viewed in the light most favorable to the non-moving party, shows no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986); *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56-57 (2d Cir. 2012).

B.   Collateral Estoppel Effect Should Be Given To The Decision Of The Massachusetts Federal Court

The doctrine of collateral estoppel "provides that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Vaccaro v. Bank of America, N.A.*, 2016 WL 4926201, at*4 (S.D.N.Y. Sept. 15, 2016) (quoting *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y 2010)).

As the Second Circuit stated in *Ball v. A. O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006):

> "Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous

4

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

(Citation and internal quotation marks omitted.)  Collateral estoppel is an "important doctrine[ ] that reduce[s] the burden of litigation by precluding multiple lawsuits, conserving judicial resources, and encouraging reliance on adjudication by preventing inconsistent decisions." *Chariot Plastics, Inc. v. U.S.*, 28 F. Supp. 2d 874, 879 (S.D.N.Y. 1998) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

In addition, "[t]he requirement that the issue in question must have necessarily been decided in the previous case ... does not mean that the prior decision must have been explicit when by necessary implication it is contained in that which has been explicitly decided." *Catalano v. Applied Biometrics Products, Inc.*, 2003 WL 22004902, at *5 (S.D.N.Y. Aug. 25, 2003) (citing *Norris v. Grosvenor Marketing Limited*, 803 F.2d 1281, 1285 (2d Cir. 1986); 5 J. Weinstein, *H. Korn, & A. Miller, New York Civil Practice* ¶ 5011.27, at 50-176 (1985)) (internal quotation marks omitted).

The necessary implication of the Massachusetts Court's explicit decision is that Michael Aziz and Joshua Aziz committed fraud through the manipulative scheme that they perpetrated. Creating a "sham" corporation to steal assets in violation of a judgment creditor's rights can only be classified as one thing: fraud.

Numerous courts have applied the doctrine of collateral estoppel to cases that involve piercing the corporate veil.  *See M. Prusman, Ltd. v. Ariel Maritime Group, Inc.*, 781 F. Supp. 248, 252 (S.D.N.Y. 1991) (applying doctrine of collateral estoppel to litigation of the issue of piercing the corporate veil: "The wrongful creation and use of the corporate Defendants under false pretenses misled the Plaintiffs, as it did the shippers and the government in the other

proceeding."); *In re Nisivoccia*, 502 B.R. 139, 153 (Bankr. E.D.N.Y. 2013) (collateral estoppel bars debtor from relitigating her personal liability based on state court's "thorough analysis of corporate veil-piercing to bind the principal of [a debtor-owned company] to the contract, despite the fact that the principal is not a signatory"); *Administrators of Tulane Educational Fund v. Ipsen Pharma, S.A.S.*, 770 F.Supp.2d 24, 29 (D.D.C. 2011) (party entitled to issue preclusion because another federal court "necessarily addressed the relationship between" the party and its subsidiary to determine whether jurisdiction could be obtained over the subsidiary by piercing the corporate veil); *In re Kilroy*, 357 B.R. 411, 425-427 (Bankr. S.D. Tex. 2006) (state court judgment that corporation was debtor's alter ego bars relitigation in bankruptcy court under doctrine of offensive collateral estoppel).

There is no question that defendants had a full and fair opportunity to litigate the issues raised in the Massachusetts action, and that the issue litigated in that action - - defendants' scheme to steal Aziz, Inc.'s assets - - is the same issue presented in this action. Accordingly, collateral estoppel effect should be given to the decision of the Massachusetts federal court.

**C.** **The Court Should Pierce The Corporate Veil And Hold Michael Aziz Personally Liable For The Judgment and $500,000 Loan**

The federal court in Massachusetts, relying on New York law (Decision at 6), found that Michael Aziz engaged in a manipulative scheme to prevent Abbas from levying on Aziz Inc.'s assets by creating a "sham corporation" (Home Interiors) which did not operate as a valid corporate entity. Just as the federal court in Massachusetts exercised its equitable powers to prevent that scheme from succeeding, so this court should do likewise.

In granting summary judgment to Abbas, the court in the Massachusetts Action made two essential findings: (i) "Home Interiors acts as an alter ego of Michael [Aziz];" and (ii) "Michael [Aziz]/Aziz Inc., through Home Interiors, perpetrated an injustice on it [Abbas] such that this

6

119537624_1

Court, exercising its equitable powers" was forced to intervene in order to prevent Michael Aziz from stealing Aziz, Inc.'s assets. Decision at 8.  By creating a sham corporation and using it to perpetrate an injustice on Abbas through a scheme and a series of manipulations, Michael Aziz has demonstrated his utter disregard for the corporate form such that this Court should pierce the corporate veil between Michael Aziz and his company Aziz Inc., and hold Michael Aziz personally liable for Aziz Inc.'s debts to Abbas, including the $438,517.92 Judgment entered by this Court after trial and the $500,000 loan that never was repaid.

As stated in *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Develop. And Trade Servs., Inc.*, 295 F. Supp. 2d 366, 377 (S.D.N.Y. 2003), "courts will pierce the corporate veil 'whenever necessary to prevent fraud or achieve equity'" (citation to quoted case omitted).  This case was heavily relied on by the court in the Massachusetts Action. Decision at 6-7.  The court in *JSC* also noted that "[n]o definitive rule governs when courts will pierce the corporate veil, because the decision 'in a given instance will necessarily depend on the attendant facts and equities.'" *JSC Foreign Econ. Assn'. Technostroyexport*, 295 F. Supp. 2d at 377.

Another case relied on by the Massachusetts court (Decision at 7) was *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F.Supp.3d 388, 402 (S.D.N.Y. 2015), where the court stated that "the plaintiff must establish that the third party 'abused the privilege of doing business in the corporate form'" (citation to quoted case omitted).

Michael Aziz unquestionably abused the privilege of doing business in the corporate form.  He engaged in "manipulations" and a "scheme" to form a "sham corporation for the sole purpose of cutting off Abbas's right to Aziz Inc.'s assets ..." Decision at 9.  Stated differently, he used two corporations - - Home Interiors, and Aziz, Inc. - - to try to steal Aziz, Inc.'s assets

and prevent his company's judgment creditor (Abbas) from levying on Aziz Inc.'s assets.[3] Because of this, the Massachusetts federal court pierced the corporate veil and found that Michael Aziz was the alter ego of his dummy corporation, Home Interiors. For the same reason, this court should pierce the corporate veil and find Michael Aziz to be the alter ego of Aziz Inc., and thus personally liable for its debts.

"New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991) (emphasis in original) (citation to quoted case omitted). The corporate veil may be pierced when the corporation has been so dominated by an individual or another corporation, and its separate identity so disregarded, that it "primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Id.*; *see also ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 229, 928 N.Y.S.2d 647, 659 (N.Y. 2011) (to state a claim for piercing the corporate veil in New York, a plaintiff must allege that the individual owners "through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene") (citation omitted).

The corporate veil will be pierced to achieve equity, even absent fraud, where the corporation is a mere shell being used by the principals to advance their own "purely personal rather than corporate ends" to the detriment of creditors. *Wm. Passalacqua Builders, Inc.*, *supra*, 933 F.2d at 138; *see also Godwin Realty Assoc. v. CATV Enterprises, Inc.*, 275 A.D.2d

---

[3]     As shown at Point II below, Michael Aziz (and his son Joshua Aziz) in fact stole $186,219 worth of Aziz, Inc.'s inventory by fraudulently conveying it to Home Interiors for no consideration. Michael Aziz also attempted to steal the $136,000 Gregorian Receivable and would have succeeded with that scheme were it not for the ruling of the Massachusetts federal court.

8

269, 712 N.Y.S.2d 39 (1st Dep't. 2000); *A.W. Fiur Co. Inc. v. Ataka & Co., Ltd.*, 71 A.D.2d 370, 374, 422 N.Y.S.2d 419, 422 (1st Dep't 1979).

Where, as here, the principal of a corporation uses a corporation to advance his purely personal rather than corporate ends to steal the corporation's assets, and abuses the privilege of doing business in a corporate form to perpetrate an injustice, the corporate veil will be pierced as a matter of equity.  In addition, where, as here, a "dummy" or "shell" entity is created solely to place a judgment debtor's assets out of the reach of creditors, there is cause to pierce the corporate veil.  *See Holme v. Global Minerals and Metals Corp.*, 63 A.D.3d 417, 418, 879 N.Y.S.2d 453, 454 (1st Dep't. 2009) (individual shareholders who caused corporation to cease doing business, stripped it of assets, and left it a "moribund shell" to avoid payment of creditor's judgment while continuing to operate through other entities, held to be corporation's alter egos); *Ventresca Realty Corp. v. Houlihan*, 41 A.D.3d 707, 709, 838 N.Y.S.2d 609, 610-11 (2d Dep't 2007) (corporate veil pierced because shell entity was created solely for purpose of signing lease for principal's benefit); *Fern, Inc. v. Adjmi*, 197 A.D.2d 444, 445, 602 N.Y.S.2d 615 (1st Dep't 1993) (same).

When determining whether there is a sufficient amount of control by the individual involved with the corporation to pierce the corporate veil, courts look to several factors, with no one factor being dispositive.  *TNS Holdings, Inc. v. MKI Securities Corp.*, 243 A.D.2d 297, 300, 663 N.Y.S.2d 144, 146-7 (1st Dep't 1997), *rev'd on other grounds*, 92 N.Y.2d 335, 680 N.Y.S.2d 891 (N.Y. 1998). These factors include:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5)

9

> common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms-length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*In Site Services Corp., LLC v. American Electric Power Co., Inc. (In re In Site Services Corp, LLC)*, 287 B.R. 79, 96 (Bankr. S.D.N.Y. 2002) (*citing Passalacqua, supra*, 933 F.2d at 139).

In *Tap Holdings, LLC v. Orix Finance Corp.*, 109 A.D.3d 167, 970 N.Y.S.2d 178 (1st Dep't 2013), New York's Appellate Division held that the corporate veil could be pierced in a situation in which a new entity is set up specifically to frustrate existing creditors by entering into a transaction that has no objective business purpose from that new entity's standpoint, stating:

> The second amended complaint plainly and specifically alleges that the Senior Lenders, in a scheme engineered for the sole purpose of extinguishing the note holders' claims against the subordinated notes, and aided by their having obtained all of the voting rights of Tap, established one corporation, New Tap, in order to siphon off the funds belonging to another, Tap. The pleading can reasonably be interpreted as asserting that there was no legitimate business purpose for setting up New Tap, and that the establishment of New Tap was simply a sham intended to cut off the note holders' ability to collect.

*Id.* at 175. That is akin to what Michael Aziz did here, where he orchestrated a series of "circuitous transactions" for the sole purpose of effectuating his scheme to steal Aziz, Inc.'s assets. (Decision at 4-5.)

Although not necessary for deciding this motion, the facts of this case are replete with the classic "badges of fraud" used to establish circumstantial evidence of intent: (1) a close family relationship among the parties and the corporations that they used as part of their scheme; (2) a

questionable transfer not in the usual course of business; (3) inadequacy of the consideration; (4) the transferor's knowledge of the creditor's claim and the inability to pay it; and (5) retention of control of the property by the transferor after the conveyance. *RTC Mortg. Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001). *See also Dempster v. Overview Equities, Inc.*, 4 A.D.3d 495, 498, 773 N.Y.S.2d 71, 74 (2d Dep't 2004); *Wall Street Associates v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999).

The instant case is analogous to the case of *Northern Tankers (Cypress) Ltd. v. Backstrom*, 967 F.Supp. 1391 (D. Conn. 1997). There, the individual principals of a corporate judgment debtor used their various companies to shelter the debtor's assets in ways that were so "economically nonsensical" from the corporations' standpoint as to clearly serve only the principals' personal interests. *Id.* at 1406-07. They "dividended" the company's accounts receivable to a parent company to keep them out of the hands of creditors; they sheltered the accounts by placing mortgages on them in the names of companies in which one of the principals secretly held a beneficial interest; and then they further "dividended" the accounts directly to the principals personally. *Id.*, at 1409-10. The court cited these and other maneuvers as amply demonstrating both sufficient domination and control and the requisite fraud or inequity, to pierce the corporate veil and hold the principals liable for the judgment debt. *Id.* at 1411. This is similar to the "manipulations" referred to by the Massachusetts federal court in its decision, where Michael Aziz orchestrated a nonsensical scheme to use a shell company (Home Interiors) to pay Valley National Bank when it could have been paid off directly by Aziz, Inc.

Based on all of the facts summarized in the Decision, the Massachusetts federal court ruled that "Michael/Aziz Inc., through Home Interiors, perpetrated an injustice on [Abbas] such that this Court, exercising its equitable powers, will intervene and extinguish" Home Interior's

119537624_1

claim to priority over Abbas.  Decision at 8.  In other words, Michael Aziz and his son Joshua

frustrated and hampered enforcement of the Judgment by engaging in a fraudulent scheme.

Michael Aziz's scheme involved not only Home Interiors, the "sham corporation" that he

created.  It also involved Aziz, Inc., the company whose assets he was trying to steal.  The whole

purpose of the scheme outlined by the Massachusetts federal court was to prevent Abbas from

levying on Aziz, Inc.'s assets so that Michael Aziz and Aziz Inc. could keep (i.e., steal) those

assets for themselves.  The ruling of Judge Hillman bears repeating:

> It is clear that Home Interiors was created <u>for the sole purpose of
> benefiting Michael and Aziz, Inc.</u> at the expense of Abbas, a
> judgment creditor … Had Michael (or Home Interiors) simply paid
> off the note, the lien would have been extinguished and Abbas
> would have a priority interest therein.  Instead, Michael and Aziz,
> Inc.'s indebtedness to Valley National Bank is not only
> extinguished, through Home Interiors they have a priority security
> interest in the Gregorian  Receivable.   Once Home Interiors
> executes on the Gregorian Receivable, <u>that money will be passed
> through to Michael/Aziz, Inc.</u>  In other words, <u>Home Interiors was
> created as a sham corporation for the sole purpose of cutting off
> Abbas's right to Aziz Inc.'s assets, including the Gregorian
> Receivable, in favor of Michael and Aziz, Inc.</u>

Decision at 8-9 (emphasis added).  In addition, the Massachusetts court found that both Michael

Aziz and Aziz Inc. (as well as Michael's son, Joshua Aziz) engaged in "manipulations" and a

"scheme" in violation of Abbas's rights as a judgment creditor.  Decision at 9.

It is clear from these rulings that Michael Aziz dominated and controlled <u>both</u> Home

Interiors and Aziz Inc., and that he used his domination and control of both companies to

perpetrate a fraud and injustice against Aziz Inc.'s judgment creditor (Abbas).  Aziz, Inc. is a

small family business, of which 53% of the stock is owned by Michael Aziz and the other 47%

of the stock is owned by his wife, Soraya, who has no role in running the business.  Michael Aziz

is the sole director of Aziz, Inc. and is its president.  His sons, Joshua Aziz and Mark Aziz, were

12

employees of the company.  It is clear from these facts that Michael Aziz dominates and controls Aziz, Inc.  If Michael Aziz did not dominate and control Aziz, Inc., he would not have been able to carry out his scheme.

In addition, as the Massachusetts court found, Michael Aziz used his personal funds to pay $366,782.43 to Valley National Bank in full satisfaction of the bank loan that it made to Aziz, Inc.  (Decision at 3-4.)  In fact, as stated at page 4 of the Decision, Michael Aziz used $255,000 from his individual retirement account, plus another $94,000 "gift" that he made to his sons Joshua and mark Aziz in order to pay off Aziz, Inc.'s bank loan from Valley National Bank ("the source of all of the funds used by Home Interiors to purchase the assignment [from Valley National Bank] was Michael;" Decision at 4.)

The fact that Michael Aziz used $366,782 of his own personal money to pay off Aziz, Inc.'s corporate debt to the bank shows that Michael Aziz deemed Aziz, Inc. to be his alter ego, and dominated and controlled it.  Moreover, in using his personal money to pay off Aziz, Inc.'s corporate debt to the bank, Michael Aziz frustrated enforcement of the judgment.  It was a fraudulent scheme which fully warrants a ruling by this Court to pierce the corporate veil between Michael Aziz and Aziz, Inc., and hold Michael Aziz personally liable for the $438,517.92 Judgment entered by this Court and for Aziz Inc.'s $500,000 loan from Abbas that never was repaid, as well as for the $186,219 worth of Aziz, Inc.'s inventory conveyed to Home Interiors for no consideration.

### POINT II

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT FOR FRAUDULENT CONVEYANCE AGAINST MICHAEL AND JOSHUA AZIZ, PLUS LEGAL FEES
#### (Second, Third, and Fourth Claim for Relief)

Michael Aziz's scheme not only was intended to steal the Gregorian Receivable.  In addition, Michael Aziz used his alter ego Home Interiors to steal no less than $186,219 worth of inventory owned by Aziz, Inc. and  to transfer it to Home Interiors for no consideration in order to prevent Abbas from levying on it.

The final Operating Report filed by Aziz in its bankruptcy case is for the month of September 2013 (it was filed on November 4, 2013).[4]  It states that the value of Aziz, Inc.'s inventory as of September 30, 2013 was $186,219.  *See* 11/4/13 Operating Report at 9-10; Complaint ¶39.

The Massachusetts federal court found that Aziz, Inc. transferred all of its remaining inventory to Home Interiors at the end of the bankruptcy.  As the Court stated:

> Home Interiors is in possession and custody of Aziz, Inc.'s remaining inventory of carpets as part of the "surrender" of assets to Home Interiors immediately upon dismissal of the Aziz, Inc.'s bankruptcy in November 2013, and is selling them off, supposedly to repay the "loan" from Michael.  According to Joshua, the inventory is located at the same storage facility in Long Island City, New York, at which Aziz, Inc. has stored the bulk of its inventory, and merely moved to a different floor of the facility.

Decision at 5.  The transfer of $186,219 worth of Aziz Inc.'s inventory for no consideration to Home Interiors - - the dummy corporation found to be the alter ego of both Michael Aziz and Aziz, Inc. - - was a clear breach of fiduciary duty by Michael Aziz and a fraudulent conveyance by both Michael Aziz and Joshua Aziz.  No consideration was paid for this transfer, and there

---

[4]      A copy of the November 4, 2013 Operating Report is annexed to the Glauber Affidavit as Exhibit F.

119537624_1

was no legitimate business reason for it other than to prevent Abbas from levying on it in furtherance of its rights as a judgment creditor.

It should be noted that Aziz, Inc. began the bankruptcy case in October 2011 with $1,200,000 worth of in inventory that it owned (as opposed to other inventory that had been consigned to it).  *See* Aziz, Inc.'s Amended Schedule to its bankruptcy petition, verified by Michael Aziz and filed with the Bankruptcy Court on November 14, 2011, a copy of which is annexed as Exhibit G to the Glauber Affidavit. *See also* Complaint ¶ 39.  No explanation was ever given to explain how the inventory went from $1.2 million at the beginning of the bankruptcy case to $186,219 at the end.  If the inventory was sold during the bankruptcy, then the proceeds from the sales should have been reflected in the sale of goods reported in the operating reports from October 2011 to November 2013.  Income from the sale of $1.2 million worth of inventory was not reported on the operating reports, which demonstrates that the inventory simply disappeared.

On this motion for summary judgment, plaintiff does not seek judgment for all of the missing inventory because Aziz, Inc. will argue that factual issues exist about it.  However, no factual issues exist regarding defendants' theft of $186,219 worth of inventory that remained at the end of the bankruptcy case.  That inventory was surrendered to Michael Aziz's alter ego, Home Interiors, where it was sold off by Home Interiors and Joshua Aziz. Decision at 5.  The proceeds from that sale were never paid to Abbas.  Accordingly, judgment should be entered against Michael Aziz and Joshua Aziz personally for $186,219, on plaintiff's claims for fraudulent conveyance (Claims 2, 3 and 4).

119537624_1

A.      **Claim Two: NY DCL § 273**

It is well settled that any conveyance made without fair consideration, **regardless of intent,** is deemed fraudulent with respect to a creditor, where such conveyance was made when the conveying party was insolvent. N.Y. Debt. & Cred. Law § 273.[5] *See also Am. Panel Tec. v. Hyrise, Inc.*, 31 A.D.3d 586, 587, 819 N.Y.S.2d 768, 769 (2d Dep't 2006) ("A finding of constructive fraud pursuant to section 273 may thus be predicated upon proof of insolvency and lack of fair consideration, without a showing of actual motive or intent to defraud"); *10-4 W. 108th St. Realty, Ltd. v. Redwood Dev., Ltd.*, 220 A.D.2d 279, 279, 632 N.Y.S.2d 538, 538 (1st Dep't 1995) ("The conveyance of the entire proceeds of the sale of the closely-held corporate defendant's only asset to defendant-appellant and his partner was fraudulent as it was made without fair consideration and rendered the debtor insolvent.  Such conveyance is fraudulent without regard to the intent of the transferor.") (citing N.Y. Debt. & Cred. Law §§ 273, 275).

To prevail on its motion for summary judgment pursuant to section 273, Plaintiff need only demonstrate that: (a) it was a creditor at the time that Aziz, Inc. conveyed its remaining inventory to Home Interiors; (b) Aziz, Inc. was insolvent at the time of the transfer; and (c) Aziz, Inc.'s conveyance to Home Interiors was made without fair consideration.  N.Y. Debt. & Cred. Law § 273: *Sklaroff v. Rosenberg*, 125 F.Supp.2d 67, 74 (S.D.N.Y. 2000) ("only two elements need to be satisfied under § 273; (1) the conveyance was made without fair consideration; and (2) that the transferor was or was rendered insolvent") (citation omitted); *Hassett v. Goetzmann*, 217 B.R. 9, 15-16 (Bankr. N.D.N.Y 1998) (to succeed on motion for summary judgment

---

[5]     N.Y. Debt. & Cred. Law § 273 provides:
   Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made to the obligation is incurred without a fair consideration.

pursuant to § 273, plaintiff must demonstrate that "there is no material issue of fact that he was the Judgment Debtor's creditor at the time of the conveyances, the conveyance rendered the Judgment Debtor insolvent and the conveyances were made without fair consideration") (citing *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1272-73 (S.D.N.Y. 1991)).

The decision of the Massachusetts federal court makes it clear that all of the elements of a claim under section 273 are satisfied, and therefore summary judgment should be entered against Michael Aziz and Joshua Aziz for $186,219, representing the value of the remaining inventory of Aziz, Inc. that was fraudulently conveyed to Home Interiors for no consideration at the conclusion of Aziz, Inc.'s bankruptcy case.

**B.**   **Claim Three: N.Y. DCL § 276**

Pursuant to N.Y. Debt. & Cred. Law § 276, a conveyance made with the "actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. Thus, unlike a claim pursuant to section 273, a creditor seeking to set aside a transfer pursuant to section 276 is not required to prove the "insolvency of the transferor [or the] inadequacy of consideration" for the transfer. *In re MarketXT Holdings Corp.*, 376 B.R. 390, 402-403 (Bankr. S.D.N.Y 2007) (granting summary judgment to plaintiff on its claim to avoid transfer to defendants pursuant to N.Y. Debt. & Cred. Law § 276 and granting plaintiff attorneys' fees pursuant to N.Y. Debt. Cred. Law § 276-a); *see also Wall Street Associates*, 257 A.D.2d at 529, 684 N.Y.S.2d at 247 ("Debtor and Creditor Law § 276, unlike sections 273 and 275, addresses actual fraud, as opposed to constructive fraud, and does not require proof of unfair consideration or insolvency").

To prevail on a motion for summary judgment pursuant to section 276, the creditor need only demonstrate that it is a creditor of the debtor and that the debtor transferred its assets with

17

the intent to "hinder, delay, or defraud" the creditor.  *Dillon v. Dean*, 236 A.D.2d 360, 361, 653 N.Y.S.2d 639, 640 (2d Dep't 1997) (where plaintiff established through clear and convincing evidence that transfer was done with intent to "hinder, delay, or defraud," summary judgment was warranted);  *Jensen v. Jensen*, 256 A.D.2d 1162, 1163, 682 N.Y.S.2d 774, 775 (4th Dep't 1998) ("where a plaintiff shows by clear and convincing evidence that a defendant had the intent to 'hinder, delay, or defraud' creditors within the meaning of Debtor and Creditor Law § 276, summary judgment will be granted");  *MarketXT Holdings Corp.*, 376 B.R. at 402-403.

Here, the Massachusetts federal court already ruled that Michael Aziz and his son Joshua Aziz engaged in a manipulative scheme and set up a sham corporation with the intent of stealing Aziz, Inc.'s assets, *i.e.*, that they committed fraud.  Based on this ruling, summary judgment should be entered against Michael Aziz and Joshua Aziz on the Third Claim for Relief.

**C.**     **Claim Three: NY DCL § 276-a (Legal Fees)**

Pursuant to N.Y. Debt. & Cred. Law § 276-a, where a creditor successfully prosecutes an action to set aside a conveyance by a debtor that is "is found to have been made by the debtor and received by the transferee with actual intent … to hinder, delay or defraud either present or future creditors" the debtor and transferee are liable for all of the creditor's attorneys' legal fees that the creditor incurred in the action. *See In re Palermo*, 2011 WL 3874866, at *15 (S.D.N.Y. Sept. 2, 2011) (upheld jury award of attorney's fees because jury reasonably could have found that grantee of fraudulent conveyance had actual intent to defraud creditors); *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 938 (S.D.N.Y. 1995) (attorney's fees awarded for fraudulent conveyance based on finding of actual fraud sufficient for summary judgment).  There is no question that the transfer of the inventory from Aziz, Inc. to Home Interiors was an intentional fraudulent conveyance.  The Amended Complaint in the instant action specifically sought the

18

payment of legal fees for defendants' intentional fraudulent conveyance. *See* Am. Compl. ¶¶ 63-65. Accordingly, any judgment to be entered herein should include an award of attorneys' fees against defendants Michael Aziz and Joshua Aziz for all of the legal fees incurred by plaintiff in (i) the Massachusetts action, and (ii) in this action.

**D.    Claim Four: NY DCL § 278**

Pursuant to N.Y. Debt. & Cred. Law § 278, a creditor with a matured claim against a debtor who has established that the debtor fraudulently conveyed his assets for less than fair consideration to a purchaser who possesses knowledge of the fraud may, among other things, "[h]ave the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim." N.Y. Debt. & Cred. Law § 278. *See also Gasser v. Infanti International, Inc.*, 353 F. Supp. 2d 342, 355 (E.D.N.Y. 2005) ("DCL § 278 allows creditors … who have established that a conveyance is fraudulent and are in possession of a mature claim, to seek an order from the Court to set aside the conveyance to the extent necessary to satisfy his claim or to disregard the conveyance and attach or levy execution upon the property conveyed.") (internal quotations omitted); *Orr v. Kinderkill Corp.*, 991 F.2d 31, 36 (2d Cir. 1993).

Here, it is undisputed that Plaintiff has a matured claim against Aziz, Inc. - - the Judgment. It is similarly undisputed that Aziz, Inc. conveyed its assets to Home Interiors not only for less than fair consideration, but for no consideration as all, and that Home Interiors knew that it was receiving the assets for less than fair consideration. Accordingly, Plaintiff is entitled to summary judgment on its Fourth Claim for Relief.

119537624_1

## POINT III

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANTS MICHAEL AND SORAYA AZIZ FOR BREACH OF FIDUCIARY DUTY
### (Fifth Claim for Relief)

It is well settled in New York, as elsewhere, that the directors of an insolvent corporation owe a fiduciary duty to creditors to preserve the assets of the corporation for the creditors' benefit. *Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 (2d Cir. 1981), *cert. denied*, 455 U.S. 990 (1982); *Hughes v. BCI Intern. Holdings, Inc.*, 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006); *New York Men's Adjustment Bureau, Inc. v. Weiss*, 305 N.Y. 1, 7, 110 N.E.2d 397 (N.Y. 1953).

The duty that directors owe to the creditors of an insolvent corporation is defined primarily by the "trust fund doctrine," by which they are said to hold the remaining corporate assets in trust for the benefit of its general creditors. *Hughes*, 452 F.Supp.2d at 308; *Weiss*, 305 N.Y. at 7. As stated in *In re Adelphia Comm'ns Corp.*, 323 B.R. 345 (Bankr. S.D.N.Y. 2005), "[m]any courts, including the Second Circuit, this one, and the state courts from which the applicable principles have their origin, have said that when a corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation expand from its stockholders to its creditors." *Id.* at , 386 n. 140. "This duty is derived from the principle that the corporate assets constitute a trust fund for the benefit of creditors." *RSL Communications PLC ex rel. Jervis v. Bildirici*, 2006 WL 2689869, at *8 (S.D.N.Y. Sept. 14, 2006) (citing *Heimbinder v. Berkovita,* 670 N.Y.S.2d 301, 307 (N.Y. Sup. Ct. 1998) (internal quotation marks omitted); Norton, Bankruptcy Law and Practice 3D 96:4 (2017) ("When a corporation becomes insolvent, courts have consistently concluded that the fiduciary duty of directors shifts to include creditors").

There can be no dispute that Abbas was and is a creditor of defendant Aziz, Inc., given its $438,517.92 unsatisfied judgment against Aziz, Inc., and the additional $500,000 (plus accrued interest) owed to it for the separate loan that it extended to Aziz, Inc.

Likewise, there is no question that Aziz, Inc. was insolvent at the time of Michael Aziz's scheme to transfer Aziz Inc.'s assets to himself and his alter ego Home Interiors. As noted by the Massachusetts federal court in the Decision, "Aziz, Inc. was insolvent at the time that Home Interiors used Michael Aziz's monies to purchase the assignment of the Valley National Bank loan, such that it had insufficient assets to fund a plan of reorganization." Decision at 5. As also noted by the Massachusetts court, Aziz, Inc. filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code on October 28, 2011 (shortly after this court entered the $438,517 judgment against it), and then voluntarily dismissed its bankruptcy case on November 14, 2013 without discharge or distribution to creditors. *Id.* at 3.

In fact, Aziz Inc. had a negative net worth of roughly $1.5 million in June 2012, when Michael Aziz and Home Interiors purported to purchase Valley National Bank's lien position. This is evidenced by the operating report filed by Aziz Inc. in the bankruptcy court in June 2012, which shows that Aziz Inc. had a negative net worth of $1,580,456 at that time. *See* Decision at 5.

Given these undisputed facts, there is no question that Aziz Inc. was hopelessly insolvent at the time of Michael Aziz's scheme. *County of Dutchess v. Dutchess Sanitation Services, Inc.*, 86 A.D.2d 884, 885, 447 N.Y.S.2d 531, 533 (2d Dep't 1982) (transferor conclusively proven to be insolvent on motion for summary judgment, by defendants' failure to present facts of an evidentiary nature to contradict plaintiff's uncontroverted evidence); *Hassett,* 217 B.R. at 18(same).

21

Given Aziz, Inc.'s insolvency, Michael Aziz, as the owner of 53% of the stock of Aziz Inc., and its president and sole director, and Soraya Aziz, as the owner of 47% of Aziz, Inc.'s stock, both had an obligation to safeguard the assets of Aziz, Inc. for the benefit of the company's creditors, including its judgment creditor Abbas.  As explained long ago by the U.S. Supreme Court in *Pepper v. Litton,* 308 U.S. 295 (1939):

> He who is in such a fiduciary position cannot serve himself first and his *cestuis* second.  He cannot manipulate the affairs of his corporation to their detriment and in disregard of the standards of common decency and honesty. He cannot by the intervention of a corporate entity violate the ancient precept against serving two masters.  He cannot by the use of the corporate device avail himself of privileges normally permitted outsiders in a race of creditors.  He cannot utilize his inside information and his strategic position for his own preferment.  He cannot violate rules of fair play by doing indirectly through the corporation what he could not do directly.  He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements.

*Id.* at 311.

That is precisely what has occurred here. Michael Aziz used his position as  the majority shareholder (his wife was the other shareholder), sole officer and director of Aziz, Inc. (an insolvent company) to gain advantage over the company's judgment creditor Abbas, and manipulate its debt structure to leapfrog over Abbas and claim superior rights to his company's meager remaining assets.   Michael Aziz also caused $186,219 worth of inventory to be transferred to his shell company (Home Interiors) for no consideration.  In so doing, Michael Aziz breached his fiduciary duty to Abbas, as the judgment creditor of his insolvent company, and should be found liable for breach of fiduciary duty on the Fifth Claim for relief for the value of the assets that were fraudulently conveyed.

22

Similarly, Soraya Aziz, as the owner of 47% of the stock of Aziz, Inc., also owed a fiduciary duty to Abbas. While Soraya Aziz will claim that she was not involved in the running of the business, that is irrelevant. As the 47% shareholder of this small family owned business, Soraya is liable for the acts of her corporation, such as the transfer of its $186,219 worth of inventory to Home Interiors for no consideration and its attempt to steal the Gregorian Receivable. For this reason, summary judgment should be entered against her on the Fifth Claim for Relief for breach of fiduciary duty.

## POINT IV

### SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST AZIZ INC. ON THE FIRST CLAIM FOR RELIEF FOR NON-PAYMENT OF THE $500,000 LOAN

There is no dispute that Aziz, Inc. borrowed $500,000 from Abbas in September 2008, and never repaid this loan. *See* this court's prior decision, 820 F. Supp. 2d 549, 551. Accordingly, summary judgment should be entered against Aziz, Inc. on the First Claim for Relief for non-payment of the $500,000 loan. *See ICBC (London) PLC v. Blacksands Pacific Group, Inc.*, 662 Fed. Appx. 19, 23 (2d. Cir. 2016) (summary judgment requiring guarantor to repay matured bridge loan was appropriate because party had an "absolute and unconditional" obligation to repay loan); *Valley Nat. Bank v. Greenwich Ins. Co.,* 254 F.Supp.2d 448, 453 (S.N.D.Y. 2003) ("In cases involving notes and guaranties, this Court has held that a plaintiff establishes its prima facie entitlement to summary judgment by establishing the execution of the agreements at issue and nonpayment thereunder") (citation and internal quotation marks omitted); *JP Morgan Chase Bank, N.A. v. Reifler*, 2014 WL 11350916, at *3 (S.D.N.Y. May 16, 2014) (granting summary judgment on breach of loan contract where it was undisputed that (1) loan agreement was executed be defendant, and (2) defendant failed to repay the loan in its entirety).

23

Abbas already has a $438,517.92 judgment against Aziz, Inc. that it has been unable to satisfy in any respect, and that it never will be able to fully satisfy out of Aziz, Inc.'s assets because of defendant's scheme to frustrate enforcement of the Judgment. Abbas seeks entry of another judgment against Aziz, Inc. for non-payment of the $500,000 loan. As previously noted, the Massachusetts decision fully supports a ruling by this Court to pierce the corporate veil. If the court does that, then Michael Aziz should be found to be personally liable not only for the previously entered Judgment, but also for non-payment of the $500,000 loan.

## CONCLUSION

For the reasons set forth herein, in the accompanying affidavit of plaintiff's counsel, and in plaintiff's Statement of Undisputed Material Facts, plaintiff's motion for summary judgment should be granted.

Dated: New York, New York
April 7, 2017

Dilworth Paxson LLP

By: _____
Ira N. Glauber
*99 Park Avenue, Suite 320*
*New York, New York 10016*
*Tel: (917) 675-4252*
*Attorneys for Plaintiff Abbas*
*Corporation (PVT) Limited*

24

119537624_I